Cite as 2022 Ark. App. 444

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CR-22-159

| | | |
|---|---|---|
| KEVIN DALE BRADY | | Opinion Delivered November 2, 2022 |
| | | APPEAL FROM THE GREENE COUNTY CIRCUIT COURT [NO. 28CR-20-123] |
| | APPELLANT | |
| V. | | HONORABLE RANDY F. PHILHOURS, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

**WAYMOND M. BROWN, Judge**

Appellant Kevin Brady was convicted by a Greene County Circuit Court jury of murder in the first degree with an additional enhancement for employing a firearm as a means of committing the murder. He was sentenced to an aggregate term of fifty-five years' imprisonment in the Arkansas Department of Correction. On appeal, appellant argues that (1) the circuit court erred when it denied his motion for directed verdict because the State did not offer sufficient evidence that he acted with purposeful intent to cause the death of Michael Nix, and (2) the circuit court erred when it allowed the State to shift the burden of proof to appellant by not creating an information that was particular as to the nature of the charge. We affirm.

Most of the facts of this case are undisputed. Appellant enlisted the help of Daniel Mangrum and Benjamin Davis to lure his ex-girlfriend, Ashley Hamilton, to Davis's camper, located at 322 Greene 702 Road in Jonesboro, on the morning of January 13, 2020, under the guise of purchasing methamphetamine from Hamilton and, in return, selling Hamilton Xanax. According to the evidence, appellant was angry at Hamilton for stealing from him and wanted to retrieve the stolen items. Hamilton arrived at the trailer around 7:00 a.m. with Michael Nix. Mangrum came to the vehicle and ushered the pair inside. At that time, appellant was inside the bathroom of the trailer hiding, with two cans of wasp spray in his hands. He had also obtained Davis's permission to fire a gun into the floor of the trailer to scare Hamilton. As soon as Hamilton and Nix entered the trailer, appellant came from the back and sprayed everyone with the wasp spray.[1] He then fired the firearm.[2] Referring to Nix, appellant subsequently asked Hamilton, "Why the hell did you have to bring him here?". Appellant then raised the gun above his head and fired it as it was coming down. As a result, Nix suffered a fatal gunshot wound to the top right of his head, which exited out of the left side of Nix's head. At the time of the shooting, there were seven people inside the trailer: appellant, Mangrum, Nix, Hamilton, Davis, Brittney Goodman, and Karissa

---

[1]The spray was wrapped in black tape. Due to the size of the trailer, everyone in proximity was sprayed.

[2]Officers only found evidence of two shots being fired (one into a window and the other into Nix's head), and only two shell casings were located; however, witnesses contended that appellant fired three shots, with the first shot going into the floor of the trailer.

Dennison.  Goodman and Dennison were in the bedroom[3] but Goodman was standing in the doorway watching things unfold.  After shooting Nix, appellant pointed the gun at Hamilton's head, stating that she had made him "catch" a "murder charge."   Everyone subsequently left the trailer, stepping over Nix's body, which was in the door.  Police did not find out about the murder until someone called and reported it several hours later.  Appellant was arrested at a house in Lafe, Arkansas, on January 14.  The murder weapon was found under the driver's seat of the car appellant and Hamilton were in.  A can of wasp spray[4] and a letter were also found in the car.  In the letter, appellant indicated that Hamilton had nothing to do with Nix's death.  Appellant was charged with first-degree murder and aggravated assault.  However, there is no indication that the State pursued the aggravated-assault charge.

Appellant's trial took place November 15–18, 2021.  Goodman testified that appellant pushed past her as she entered the bedroom and began spraying the wasp spray.  She stated that appellant then pulled a gun from behind his back and fired two shots: one into the window and the other toward Hamilton's foot.  She said that appellant commented about Hamilton bringing Nix with her.  She stated that appellant "walked over" and raised the gun, and when the gun came down, appellant fired.  She admitted that she did not see appellant squeeze the trigger, but she did see appellant's hand on the trigger.  She testified

[3]Appellant told Goodman to get in the room because she was going "to ruin everything."
[4]The other can of wasp spray was found at the murder scene.

3

that Nix fell on the floor against the wall of the trailer. Goodman stated that appellant then pointed the gun at Hamilton's face and said, "[Y]ou made me catch a murder charge, you bitch." She said that she and Dennison subsequently left the trailer.

On cross-examination, Goodman testified that appellant had the gun above his head and brought it down like he was going to hit someone with it. She stated that she could not say whether the shooting was an accident, but it looked like appellant was about to strike Nix in the head.

Hamilton testified that she had been in an on-and-off relationship with appellant for a year before the murder. She stated that she and Nix were friends who knew each other through drug activity. She said that she had been at appellant's house one day and had fallen asleep. She stated that when she awoke, appellant had taken her money and her friend's car. She testified that she was hanging out with appellant another day when he fell asleep on her. She said that she took appellant's money and drugs and got her friend's car back. This is what led appellant to devise a plan to get her to Davis's trailer. Hamilton testified that she was with Nix when she was contacted by both Mangrum and Davis to bring methamphetamines to Davis's trailer and to pick up some Xanax from there. She said that she and Nix arrived at the trailer around 7:00 a.m., and that Mangrum came outside and told them to come inside. She stated that about ten seconds later, appellant came out of the back and sprayed them with wasp spray. She said that appellant shot in the air a couple of times, and as this was going on, Nix was trying to get out of the trailer. Hamilton testified that appellant hit Nix with the gun and it went off. She said that appellant then put the gun

4

to her head, and she begged him not to kill her. She stated that appellant had Mangrum go to the car and bring Hamilton's wallet back. She said that she subsequently left the trailer with appellant because she was scared for her life. She described appellant as being in disbelief about what had happened. She stated that they went to Paragould so that appellant could get some drugs and that he told her to keep her phone off. They eventually went to Malissa Tate's house in Lafe.

On cross-examination, Hamilton stated that appellant immediately came out spraying wasp spray when they walked into the trailer. She said that appellant did not point the gun at Nix but that the gun went off as appellant went to hit Nix on the head with it. She stated that appellant told her several times that he did not mean to shoot and kill Nix. She also said that appellant was suicidal.

On redirect, Hamilton testified that appellant struck Nix on his head with the gun and that the gun was fired at a range closer than six inches. She admitted that appellant wanted to commit suicide because he did not want to go back to prison.

Davis testified that Hamilton came to his trailer on the date in question because she "had some stuff [there]." He said that appellant was at his trailer because appellant was trying to get in contact with Hamilton. He stated that Hamilton showed up with Nix, even though she had said that she was alone. He said that Nix tried to fight appellant and was "getting the upper hand and the gun was still in [appellant's] hand, and [appellant] accidentally shot [Nix]."

5

On cross-examination, Davis testified that Nix was trying to wrestle with appellant, and that is when the gun went off. He stated that appellant said multiple times that he did not mean to shoot Nix.

On redirect, Davis testified that he was also sprayed with the wasp spray. He denied that appellant held a gun to Hamilton's head. He stated that appellant was just talking with the gun in his hand.

Maddison Harrell, a forensic DNA analyst for the Arkansas State Crime Laboratory (Crime Lab), testified that blood was found on appellant's boots and that other biological material was found on the murder weapon. He stated that both items had Nix's DNA on them.

Dr. Jennifer Forsyth, a medical examiner at the Crime Lab, testified that she performed the autopsy on Nix on January 16, 2020. She stated that the bullet entered Nix's head on the right back side and exited on the left top side. She said that Nix also had a broken finger on his right hand but that she did not know how or when that injury had taken place. She testified that there was evidence of close-range fire because stipple was present. She said stipple would not be present in tight (touching) or far away contact. She concluded that Nix died from a gunshot wound to his head and that the manner of death was homicide.

On cross-examination, Dr. Forsyth stated that stipple appears when a gun is fired between six inches and two feet from the target. She said there was no indication that there was an intervening object between the gun and Nix's head.

6

Zachary Elder, a firearm and toolmark examiner with the Crime Lab, testified that he examined the suspected murder weapon, a 9mm Luger Hi-Point Model C pistol, and subsequently test fired it. He stated that he also examined two spent shell casings and determined that those casings were fired by the Hi-Point pistol.

At the conclusion of the State's case, appellant moved for directed verdict, stating that the State had failed to show that appellant shot and killed Nix purposely.[5] Appellant also argued that there was a lack of evidence that appellant acted knowingly. Appellant's motion stated that all the witnesses testified that the shooting was accidental. The circuit court denied the motion.

Appellant testified that Hamilton had taken everything he owned, including clothes, when he fell asleep in front of her. He stated that he was going to use the money to pay on his parole fees. He said that he asked Mangrum and Davis to lure Hamilton to Davis's trailer. He stated that he warned the men that he might have to get physical with Hamilton. He said that he was in the back of the trailer with a can of wasp spray and a gun. He stated that he did not want Hamilton to see Goodman because the two had "had some words" before. He testified that he was under the impression that Hamilton was coming to the trailer alone and did not find out otherwise until Mangrum announced that someone was with Hamilton. He stated that he told Mangrum not to let the other person inside the trailer. Appellant

---

[5]There was also a directed-verdict motion based on the felony-murder portion of first-degree murder. However, for reasons stated later in this opinion, we need not address this aspect of first-degree murder.

testified that when Hamilton came inside, he fired a shot by his feet and then sprayed Hamilton with the wasp spray. He stated that he then noticed Nix bent over with his cell phone. He said that his first thought was to "bust his head." He stated that he "swung at [Nix] with the gun, and [appellant] didn't even realize the gun had discharged from the ringing from the shot." He testified that Nix went limp and that he caught Nix and sat him down. He said that when he saw the bullet hole, his first words were "God, I didn't mean to kill that boy." He stated that it was an accident. He said that he then pointed the gun at Hamilton and said, "[M]an, I done caught a bogus murder charge because of you[.]" He testified that he was not pointing the gun when it went off. He said that as Dennison was leaving, she leaned over to pick up Nix's phone, but he made her put it down. He stated that he told everyone "to get the hell out of [there]." He said that he put the gun to his chin after he got into the car, but Hamilton convinced him not to shoot himself. He stated that he did not even know who Nix was until Hamilton told him after the shooting. He testified that he sat in the car and wrote the letter on Hamilton's behalf before they left the scene. He said that he also wrote a letter to Nix's family, apologizing and letting them know that it was an accident.[6] He stated that he did not know the gun would go off when he struck Nix in the head with it. He said that after they left the trailer, he and Hamilton went to the house of one of Hamilton's friends in Paragould. He stated that they then went somewhere for him to get K2—synthetic THC—to smoke. He said that they finally ended up at Tate's

---

[6]The letter was never found and is not a part of the record.

house, where he contemplated suicide by cop. He stated that when the police arrived, he rolled up the K2 and smoked over half of it, and then he surrendered to the police. He testified that he told the police "a billion times" that it was an accident. He stated that he did not intend to kill Nix.

On cross-examination, appellant stated that he is a felon and, as such, should not be in possession of a firearm. He said that he only intended to pistol whip Nix. He admitted that he was upset with Hamilton for taking his money. He said that he had given Davis the gun but wanted it back for "shock therapy, shoot through the floor, get [Hamilton's] attention." He testified that Davis gave him permission to shoot through the floor and indicated where in the floor appellant should fire the weapon in order to miss the pipes. Appellant stated that he frightened Hamilton by firing the gun. He further testified, "[A]fter that happened, I seen the boy bent over. He was trying to back out of the trailer. I throw my left leg in behind him and my left arm around him. That's when I swung and hit him." Appellant admitted firing the weapon that killed Nix; however, he said it was not intentional. He also admitted that he pulled the trigger of the gun. Appellant stated that he wrote the letters before he left the murder scene; however, the State was able to point out that the letter was not written until 2:00 p.m. He said that it was not his intention to run, but he wanted to see his dog.

On redirect, appellant stated that he told his mother and daughter, via voicemail, that he was going to let the police kill him. He said that he wanted to see his dog and his grandchildren before dying.

9

Appellant unsuccessfully renewed his directed-verdict motions. The jury found him guilty of first-degree murder and sentenced him to forty years' imprisonment. They also enhanced the sentenced by fifteen years for employing a firearm during the commission of the murder.[7] Appellant received an aggregate sentence of fifty-five years' imprisonment. The sentencing order was entered on November 23. Appellant filed his notice of appeal on December 14. This timely appeal followed.

We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence.[8] In reviewing a sufficiency challenge, we assess the evidence in the light most favorable to the State and consider only the evidence that supports the verdict.[9] We will affirm a judgment of conviction if substantial evidence exists to support it.[10] Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture.[11] Circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion.[12] Whether the evidence excludes every other hypothesis is left to the jury to

---

[7]*See* Ark. Code Ann. § 16-90-120 (Supp. 2021).

[8]*Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491.

[9]*Id.*

[10]*Id.*
[11]*Id.*

[12]*Collins v. State*, 2021 Ark. 35, 617 S.W.3d 701.

decide.[13]  Further, the credibility of witnesses is an issue for the jury, not the court; the trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence.[14]

Pursuant to Arkansas Code Annotated section 5-10-102(a)(2),[15] a person commits murder in the first degree if, "[w]ith a purpose of causing the death of another person, the person causes the death of another person."  A person acts purposely with respect to his or her conduct or a result of his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result.[16]  The supreme court has held that the purpose to commit a crime can be formed in an instant.[17]  Intent is seldom capable of proof by direct evidence and must usually be inferred from the circumstances surrounding the killing.[18]  The intent necessary for first-degree murder may be inferred from the type of weapon used; the manner of its use; and the nature, extent, and location of the wounds.[19]

---

[13]*Id.*

[14]*Armstrong, supra.*

[15](Supp. 2021).

[16]Ark. Code Ann. § 5-2-202(1) (Repl. 2013).

[17]*Collins, supra.*
[18]*Id.*

[19]*Id.*

Appellant concedes that he shot Nix; however, he contends that the evidence was insufficient to support his conviction for first-degree murder because the State failed to show that he did so purposely. This argument is without merit.

The evidence at trial demonstrated that appellant was angry with Hamilton for stealing from him and wanted to teach her a lesson. He obtained prior permission from Davis to fire his gun inside the trailer and armed himself with two cans of wasp spay and the gun before hiding in the back of the trailer. When Hamilton arrived, appellant mounted his attack by spraying the wasp spray and firing the gun. He then questioned why Hamilton had brought Nix with her before stepping forward, raising the gun, and pulling the trigger as he lowered the gun. He stated that it was his intention to pistol whip Nix and that the gun went off as Nix was struck. However, the evidence does not support this version of events. Stipple was found on Nix's wound indicating that it was fired from a distance between six inches and two feet, not as it was striking Nix. Additionally, appellant had his finger on the gun's trigger as he lowered the weapon. Since intent can form in an instant, the jury could reasonably infer that appellant purposely killed Nix: appellant used a loaded 9mm weapon; he kept his hand on the trigger, even though he said it was his intention to pistol whip Nix; and he fatally shot Nix from a distance between six inches and two feet in the back of his head as Nix was trying to leave the trailer. Viewing the evidence in the light most favorable to the State, we hold that there was sufficient evidence to support appellant's first-degree-murder conviction based on purposeful intent. Accordingly, we affirm.

As his second point on appeal, appellant argues that the circuit court erred when it allowed the State to shift the burden of proof to appellant by not creating an information that was particular as to the nature of the charge. This argument goes to the felony-murder aspect of Arkansas Code Annotated section 5-10-102(a). Because the State presented sufficient evidence of first-degree murder based on purposeful intent, we need not decide any argument regarding the felony-murder conviction.[20] We have previously affirmed a general guilty verdict so long as there was sufficient evidence to support the conviction on one ground.[21]

Affirmed.

ABRAMSON and WHITEAKER, JJ., agree.

*Sonia Fonticiella*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rachel Kemp*, Sr. Ass't Att'y Gen., for appellee.

---

[20]*See Keesee v. State*, 2022 Ark. 68, 641 S.W.3d 628.

[21]*Id.*